IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

TIMOTHY W. SPARKS,        )
                                 )
          Petitioner,     )
                                 )
vs.                         )     Case No. 13-3051-CV-S-ODS
                                 )     Crim No. 11-03045-01-CR-S-ODS
UNITED STATES OF AMERICA,  )
                                 )
          Respondent.   )

ORDER AND OPINION DENYING MOTION FOR POSTCONVICTION RELIEF AND
DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY

       Pending is Movant's request for postconviction relief pursuant to 28 U.S.C. §
2255.  The motion is denied, and the Court declines to issue a Certificate of
Appealability.

I.  BACKGROUND

       Movant was originally indicted on June 15, 2011, at which time he was charged
with two counts of being a felon in possession of a firearm.  Specifically, Count I
charged him with possessing a Hercules .410 gauge shotgun and Count II charged him
with possessing a Mossberg 20 gauge shotgun.

       A Superseding Information was filed on October 18, 2011.  Count I charged
Movant with being a felon in possession of a firearm based on his possession of both
the Hercules and Mossberg.  Count II charged him with counterfeiting money.  On that
same date, Movant (1) executed a written waiver of indictment, (2) executed a written
Plea Agreement, and (3) appeared before a Magistrate Judge (the Honorable James C.
England) for a hearing on his waiver and change of plea.

       The Plea Agreement sets forth the factual predicates for both counts of the
Superseding Information.  With respect to Count I – which is the focal point of the issues
Movant has raised in this proceeding – the Plea Agreement states Movant unlawfully
entered a residence and stole two rifles and a shotgun.  The Mossberg was the shotgun

he stole; during the robbery, he carried (and left behind) the Hercules.  Plea Agreement, ¶ 3(A)(1).  Subsequent testing revealed Movant's DNA on the Hercules.  Id. ¶ 3(A)(2). One week after the robbery, Movant was traveling in a stolen vehicle when he collided with the rear of another vehicle.  Movant then passed the other vehicle; while doing so, he brandished the Mossberg and later discharged it at the other vehicle's occupants. Id. ¶ 3(A)(3).  Movant then led law enforcement in a car chase, culminating in him attempting to "carjack" two more cars before police caught up to him and, after a struggle, arrested him.  Id. ¶ 3(A)(4).  With respect to Count II, the Plea Agreement recites police attempted to stop Movant in a stolen vehicle.  Movant led police on a high-speed chase but was eventually apprehended; counterfeit currency was found on Movant's person and in the stolen car, and materials for making counterfeit currency were found in the car.  Id. ¶ 3(B).

The Plea Agreement also contains the parties' predictions regarding application of the Sentencing Guideline.  After first establishing the parties' agreement would not bind the Court, id. ¶¶ 6(a)-(b); 10(a), with respect to Count I the parties agreed

1. The base offense level was 26
2. Two enhancements applied because Movant possessed at least three firearms and because at least one firearm was stolen – but the maximum increase for these two enhancements was three levels.
3. Four levels would be added because Movant possessed a firearm in connection with another offense and listed two such offenses: the robbery of the house and the assault with the shotgun.
4. Two more levels would be added because Movant recklessly endangered others while trying to avoid arrest.

Id. ¶ 10(b).

While under oath during the hearing, and in responses to Judge England's questions, Movant stated:

1. Nobody made any promises of any kind to induce him to plead guilty.  Plea Tr. at 6.
2. Nobody made any threats or promises to induce him to plead guilty.  Plea Tr. at 5-6.

3. He had read the Plea Agreement and understood its contents.  Plea Tr. at 6.

4. He had reviewed with his attorney the guideline calculations contained in the Plea Agreement, and understood those calculations were not binding on the sentencing judge.  Plea Tr. at 7-8.

5. He had reviewed the Plea Agreement's recitation of the factual bases for the crimes, and those statements were true.  Plea Tr. at 8-9.

6. He had enough time and opportunity to discuss the case with his attorney.  Plea Tr. at 9.

During the sentencing hearing, the Government's counsel recounted the factual underpinnings described above.  Sentencing Tr. at 4-6.  While not under oath at the time, Movant acknowledged responsibility for these actions.  Sentencing Tr. at 7.

The Presentence Investigation Report ("PSR") determined the parties' guideline calculations were correct: the base offense level was 26, a total of three levels were added because of the number of firearms possessed and the fact that at least one of the firearms was stolen, four levels were added because Movant possessed a firearm in connection with at least one other felony offense (the burglary and the assault), and two levels were added because of Movant's reckless flight from law enforcement – resulting in an adjusted offense level of 35.  This offense level determined the applicable guideline (because of the degree of difference between this offense level and the one applicable to the counterfeiting charge); from this, three levels were subtracted for Movant's acceptance of responsibility.  The total offense level of 32, combined with Movant's Criminal History Category of VI, resulted in a guideline range of 210-262 months.

Movant's attorney filed a Sentencing Memorandum prior to sentencing.  The Memorandum argued the Court should consider a departure pursuant to section 5H1.3 of the Sentencing Guidelines, which is the policy statement for departures based on the defendant's mental and emotional condition.  Alternatively, the Memorandum argued the Court should vary from the Guideline sentencing range based on the factors set forth in 18 U.S.C. § 3553(a).  To support these arguments the Memorandum recited Movant's mental history and record of alcohol and drug abuse and included reference to

a mental health evaluation performed at Burrell Behavioral Health. Counsel reiterated these arguments during the Sentencing Hearing. Sentencing Tr. at 3-4.

The Court rejected counsel's arguments for a departure or a variance. Movant was sentenced to 210 months of imprisonment. Movant's appeal was dismissed based on the appeal waiver contained in the plea agreement. United States v. Sparks, No. 12-1879 (8th Cir. Oct. 9, 2012).

## II. DISCUSSION

Movant contends his attorney provided ineffective assistance in a variety of respects. A claim of ineffective assistance of counsel is governed by the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). "This standard requires [the applicant] to show that his 'trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced his defense.'" Nave v. Delo, 62 F.3d 1024, 1035 (8th Cir. 1995), cert. denied, 517 U.S. 1214 (1996) (quoting Lawrence v. Armontrout, 961 F.2d 113, 115 (8th Cir. 1992)). This analysis contains two components: a performance prong and a prejudice prong.

> Under the performance prong, the court must apply an objective standard and "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," Strickland, 466 U.S. at 690, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Id. at 689. Assuming the performance was deficient, the prejudice prong "requires proof 'that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different.'" Lawrence, 961 F.2d at 115 (quoting Strickland, 466 U.S. at 694).

Id. Failure to satisfy both prongs is fatal to the claim. Pryor v. Norris, 103 F.3d 710, 713 (8th Cir. 1997) (no need to "reach the performance prong if we determine that the defendant suffered no prejudice from the alleged ineffectiveness"); see also DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000).

The Court concludes a hearing is not necessary because Movant's claims can be evaluated based on the Record that has already been developed. To this end, the

Court declares that it has not considered the affidavits supplied by the Government: considering them would constitute an expansion of the Record, and if the Court permits the Government to augment the Record it must allow Movant to do the same – and then a hearing would be required to evaluate the parties' competing affidavits and evidence. However, as stated, additional information is not required and there is no need to add to the already-established Record or to have a hearing.

Many of Movant's arguments are stated in different ways under multiple headings. For ease of discussion, the Court has grouped the arguments in categories and has addressed each argument just once.

## A. Failure to Investigate

Movant contends his attorney was ineffective for advising him to agree to the Plea Agreement's provisions that led to the imposition of offense level increases for (1) possessing one or more stolen firearms and (2) using a firearm in connection with one or more felonies. He argues his attorney failed to interview witnesses who would have established an alibi for the robbery, and the advice regarding the assault was allegedly faulty because the State of Missouri declined to prosecute him for the assault. The Court rejects this claim because Movant represented to the Court on multiple occasions that he participated in the robbery and shot the shotgun at other drivers. On one of those occasions, Movant's representation was made under oath. At this juncture the Court need not – and will not – entertain arguments from Movant that his sworn statements were false. The Court is entitled to rely on statements made during a change of plea hearing – particularly those made while under oath. E.g., United States v. Gomez, 326 F.3d 971, 974 (8th Cir. 2003); United States v. Johnson, 751 F.2d 291, 294 (8th Cir. 1984), cert. denied, 471 U.S. 1126 (1985) ("[A] defendant must offer a valid reason why his earlier sworn statements should not be believed.").

The Court also notes that the State of Missouri's decision not to charge Movant with assault does not mean he did not discharge the shotgun. It could be that the State determined there was no need to prosecute Movant because he was sufficiently punished in the federal case. It could be that the State determined it could not prove

the crime beyond a reasonable doubt, which is a higher standard than necessary for the sentencing enhancement to apply. Finally, Movant's admission that he fired the shotgun serves as proof that he did – even without a charge or conviction in state court.[1]

## B. Counsel's Informational Errors

Movant next argues that counsel's ineffectiveness caused Movant to plead guilty without sufficient information, rendering his plea involuntary. Specifically, he argues his attorney did not provide him with the results of the DNA test (which established Movant's DNA was on the Hercules) and the gunshot residue ("GSR") test (which established the driver's area of the stolen car Movant was driving tested positive for gunshot residue). He also argues his attorney told him the time he spent in custody pending trial would not be applied to any sentence imposed, which made him feel "rushed." Finally, Movant contends his attorney told him that he would be granted a downward departure or variance and sentenced to 180 months imprisonment.

With respect to the DNA and GSR tests, it is important to note that Movant is not claiming counsel did not investigate these materials. He is also not claiming that he was not told of the results of the tests. Movant instead contends that he asked counsel to "provide" these tests to him (presumably by providing actual copies of the reports), but failed to do so. Assuming Movant's factual recitation is correct, this does not render his plea involuntary or unintelligent. There is no evidence indicating Movant needed actual possession of the DNA or GSR tests in order to make a fully informed and voluntary and intelligent choice between accepting the plea or proceeding to trial. See United States v. Vest, 125 F.3d 676, 679 (8th Cir. 1997) (describing standard). Moreover, logic dictates otherwise: had Movant's requests for the reports really been

---

[1]Interestingly, even in this postconvction proceeding Movant has not denied firing the shotgun: he merely says he was not charged with that crime and there was no evidence that he fired the shotgun (apart, of course, from his sworn statement that he did). Assuming purely for the sake of argument that Movant did not rob the house and steal the Mossberg, Movant's sentence would not have been different: he still possessed the stolen Mossberg (regardless of who stole it), and he used it during the assault.

that important to the decision, Movant would not have pleaded guilty.  In the Plea Agreement, Movant represented that he was "satisfied with the assistance of counsel." Plea Agreement, ¶ 20.  Finally, Movant's admissions during the change of plea hearing – unaccompanied by any objection to counsel's performance – belie any claimed "need" for the test results before Movant could make a decision.  Cf.  United States v. Murphy, 572 F.3d 563, 569 (8th Cir. 2009) (citing United States v. Newson, 46 F.3d 730, 733 (8th Cir. 1995) (failure to assert objections to counsel's performance at change of plea hearing refutes claim of ineffective assistance as basis for withdrawing plea).

With respect to the effect of state custody, the Court notes Movant *was* in state custody, and his presence for federal hearings was procured through the use of a writ of habeas corpus ad prosequendum.  Thus, depending on when counsel made the statement, counsel's statement was true.  Regardless, the Record conclusively contradicts Movant's present assertion that he was pressured to change his plea.

Finally, the Record also disproves Movant's claim that he was promised he would be given a downward departure or variance and sentenced to 180 months.  The plea agreement and Movant's exchange with Judge England establishes this point.

## C.  Failure to File Motions or Present Arguments

Movant contends his attorney was ineffective in failing to properly present the arguments in favor of a downward departure or guideline variance, but he does not explain what more counsel could or should have done.  The Record reflects counsel filed a Sentencing Memorandum and followed up during the sentencing hearing.  The fact that Court was not persuaded does not demonstrate counsel's ineffectiveness.

Movant also vaguely alleges his attorney failed to file certain motions that Movant requested be filed, but Movant does not identify the motions in question.  Elsewhere, Movant contends his guideline calculations were incorrect and it may be that he is contending counsel provided ineffective assistance in failing to object.  However, Movant's argument lacks merit.

Movant's base offense level was determined to be 26 based on section 5K2.1(a)(1) of the Sentencing Guidelines.  One of the prerequisites for this provision is

that the defendant previously sustained "at least two felony convictions of either a crime of violence or a controlled substance offense."  The PSR explains this prerequisite was satisfied by three of Movant's prior convictions: for second degree burglary, distribution of a controlled substance, and resisting arrest.  Movant contends the burglary conviction was not a crime of violence.   First, the Court disagrees: the Missouri crime of second degree burglary is a crime of violence.  E.g., United States v. Olsson, 713 F.3d 441, 449-50 (8th Cir. 2013); United States v. Bell, 445 F.3d 1086, 1090-91 (8th Cir. 2006). Second, the PSR identifies three prior crimes of violence or controlled offenses; even if the burglary does not count, the other two would support application of section 5K2.1(a)(1).

Movant also invokes the Supreme Court's recent decision in Alleyne v. United States, 133 S. Ct. 2151 (2013), to argue he was entitled to a jury's determination as to whether section 5K2.1(a)(1) applied.  Setting aside the question of whether counsel violated Strickland's performance prong by failing to predict Alleyne more than a year before it was decided, Movant's argument is rejected because (1) in pleading guilty Movant was waiving any right to a jury trial he might have and (2) Alleyne does not apply to sentencing enhancements based on the fact or characterization of a prior conviction.  E.g., United States v. Abrahamson, No. 11-2404 (8th Cir. Sept. 9, 2013) (per curiam); see also Alleyne, 133 S. Ct. at 2160 n.1.


## D.  Failure to Convey Plea Offer


Movant contends his attorney failed to convey a plea offer whereby he would have been sentenced to 180 months.  However, Movant does not establish that such a plea offer existed.  Second, Movant elsewhere (in his claim of prosecutorial misconduct) contends his attorney told him about the offer and he wanted to accept it – which contradicts his claim that counsel failed to communicate its existence.  Third, it appears the offer in question was not an offer for 180 months but rather an offer that contained incorrect guideline calculations.  The parties' agreements regarding guideline calculations do not bind the Court and the Court is required to start with a proper guideline calculation, e.g., United States v. Morris, 458 F.3d 757, 760 (8th Cir. 2006), so

even if Movant was deprived of an opportunity to enter a plea containing the wrong guideline calculations he was not prejudiced.

## E.  Prosecutorial Misconduct

Movant contends he is entitled to postconviction relief because of prosecutorial misconduct.  Specifically he contends the Assistant United States Attorney (1) made disparaging comments about Movant in the courtroom while in the presence of Movant's family and friends, (2) withdrew the offer mentioned in the preceding section, and (3) made misleading comments during the sentencing hearing.  These claims are not premised on ineffective assistance of counsel; moreover, they are not cognizable in a postconviction proceeding.  Regardless, Movant's first two complaints lack legal merit as they do not rise to the level of prosecutorial misconduct, and his last complaint cannot be considered because Movant does not specify the allegedly misleading comments.

## F.  "Due Process"

Movant seems to contend his attorney violated the Due Process Clause by refusing to accept calls, not visiting him in jail, and not being sufficiently available. Assuming the truth of these factual allegations, the Court holds Movant is not entitled to relief.  The Due Process Clause does not mandate a certain number of phone calls or visits between an attorney and a defendant.  Similarly, the Sixth Amendment right to counsel does not dictate a certain number of communications between an attorney and the client.  The question at all times remains: were the Strickland standards satisfied?  If counsel communicates daily and the standards were violated, then relief is warranted; if counsel communicates twice but satisfies Strickland, relief is not warranted.  Movant's complaint about the quantum of communication does not provide an independent basis for relief – Movant still must demonstrate he received ineffective assistance of counsel. This he has not done.

## G. Certificate of Appealability

In order to appeal, Movant must first obtain a Certificate of Appealability. The Court customarily issues an Order addressing the Certificate of Appealability contemporaneously with the order on the Motion because the issues are fresh in the Court's mind and efficiency is promoted. <u>See</u> Rule 11(b), Rules Governing Section 2254/2255 Proceedings.

28 U.S.C. § 2253(c)(2) provides that a Certificate of Appealability should be granted "only if the applicant has made a substantial showing of the denial of a constitutional right." This requires the Court to conclude "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003) (quotation omitted). The Court concludes this showing has not been made, and for that reason declines to issue a Certificate of Appealability.

## III. CONCLUSION

For these reasons, the Court denies the Motion for Postconviction Relief and declines to issue a Certificate of Appealability.

IT IS SO ORDERED.


/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: October 28, 2013                  UNITED STATES DISTRICT COURT